IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HOWARD SNYDER,                )
                Plaintiff,    )
                              )
      vs.                     )     Civil Action No. 08-566
                              )
BAXTER HEALTHCARE, INC.,      )
FENWAL, INC., and TPG,        )
                Defendants    )

**MEMORANDUM OPINION**

HAY, Magistrate Judge

The Plaintiff, Howard Snyder ("Snyder" or "the Plaintiff"), filed this action alleging that Baxter Healthcare Corp. ("Baxter") and its corporate successors, Texas Pacific Group) ("TPG") and Fenwal, Inc. ("Fenwal"), violated his rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000(e) *et seq*.,[1] the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*., and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.A. § 12101 *et seq*.  Snyder also alleges discrimination in violation of the Pennsylvania Human Relations Act (" PHRA"), 43 Pa. Con. Stat. Ann. §§ 951 *et seq.*  Pending is Baxter's Motion to Dismiss the Complaint (Doc. 32 ) pursuant to Fed. R. Civ. P. 12(b)(6).  Because Snyder has failed to state a timely claim against Baxter, the Motion will be granted.

**I. BACKGROUND**

---

[1] Title VII makes it unlawful for an employer to discriminate on the basis of race, color, religion, sex, or national origin. 42 U.S.C. 2000e-2.  Neither the Complaint nor the EEOC Charge alleges discrimination on any of these grounds.  The Title VII claims will, therefore, be dismissed as to each of the Defendants.

Howard Snyder, a sixty-eight year old white male, was hired by Baxter in 1990 to install and conduct training in the operation of machinery used in blood transfusions. (Doc. 40 at 2). Effective March 1, 2007, Baxter sold the assets of its transfusion therapy business unit to TPG, which immediately formed a new corporation, Fenwal. (Doc. 33 at 1). Snyder has been employed by Fenwal since its inception.

Snyder's Complaint comprises two Counts. In Count I, he alleges that "[b]eginning in or about the early nineties to the present, the Defendants engaged in unlawful employment practices in violation of Title VII and the Pennsylvania Human Relations Act." (Doc. 1 at 3-4) (citations omitted).[2] Although Count I encompasses claims made under the PHRA, the Plaintiff reasserts those claims in Count II. The essence of both Counts is as follows:

> Plaintiff, at all relevant times, was subject to a continuous and ongoing hostile work environment, subject to disparate treatment, harassment, humiliation, and discrimination based on his age (66), his disability/perceived disability as well as retaliation for complaining regarding the ongoing hostile work environment, disparate treatment, harassment, and discrimination.

(Id. at 4). The Court will refer to the factual underpinnings of Snyder's claims in order to provide context for its conclusions of law.

## II. STANDARD OF REVIEW

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007), the Supreme Court held that a complaint challenged pursuant to Fed. R. Civ. P. 12(b)(6) must be dismissed if it fails to allege "enough facts to state a claim to relief that is plausible on its face." Said another way, a plaintiff is required to plead facts sufficient to "raise a right to relief above

---

[2]Although the Plaintiff does not mention the ADA or the ADEA in either Count of the Complaint, the jurisdictional paragraph makes plain that he intends to allege violations of these Acts in Count I. (Doc. 1 at 2).

the speculative level." Id. at 1965. The court is not obligated to accept inferences unsupported by facts set out in the complaint, see California Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)), and is not required to accept legal conclusions framed as factual allegations. Bell Atlantic Corp., 127 S.Ct. at 1965. See also Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (explaining, citing Twombly, that "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice; noting that the complaint "must allege facts suggestive of [the proscribed] conduct;" and requiring plaintiff to allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim"). Id. In evaluating the complaint, the Court views all facts and reasonable inferences drawn therefrom in the light most favorable to Snyder. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008).

### III. ANALYSIS

In support of its Motion to Dismiss, Baxter contends that: (1) the state claims against it are time-barred; (2) most of the federal claims alleged arose after it was sold, and are not attributable to Baxter; (3) the remaining federal claims are time barred; (4) the continuing violation doctrine does not operate to save the time-barred claims, given Snyder's failure to allege that any discriminatory act occurred during the applicable limitations period; and (5) the claim based on hostile work environment similarly fails because Snyder did not allege that any act made part of this claim took place within the limitations period.

#### A. State Law Claims

The "Plaintiff concedes that . . . claims against Baxter . . . asserted under the [PHRA] . . . are time barred." (Doc. 40 at 4 n.2). Thus, Baxter's Motion to Dismiss will be granted as to all

state law claims.

### B. Federal Claims Based on Events After March 1, 2007

Baxter identifies in the Complaint three broad categories of allegations: (1) those made in the present tense, pertaining to his current working conditions; (2) those that are date-specific; and (3) others that can fairly be categorized as vague and highly general - *i.e.*, the "Defendants" engaged in "continuous" and "ongoing" discrimination.

Baxter asks first that all claims alleged to have taken place on or after March 1, 2007 be dismissed because Snyder ceased to be employed by Baxter as of that date. It is undisputed that Baxter's liability does not extend to events that took place after Fenwal began operation. The Court will, therefore, grant Baxter's Motion with respect to claims based on events post-dating the sale of Baxter.

### C. Federal Claims based on Alleged Conduct Preceding November 10, 2006

#### 1. Application of the Continuing Violation Doctrine

Baxter argues next that all claims based on events alleged to have occurred prior to November 10, 2006 are time-barred. Prior to filing an employment discrimination suit, a plaintiff must file an administrative discrimination charge with the Equal Employment Opportunity Commission ("EEOC") within the statutory time period which, in Pennsylvania, is 300 days. Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir.2000). Snyder filed with the EEOC on September 6, 2007, meaning that claims based on events occurring more than 300 days earlier - prior to November 10, 2006 - are presumptively barred.

The Supreme Court has stated that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002) ( quoting Mohasco Corp. v. Silver,

447 U.S. 807, 826 (1980)). In Mohasco, the Court rejected arguments that strict adherence to a statutory time restriction for filing a charge was "unfair" or that "a less literal reading of the Act would adequately effectuate the policy of deferring to state agencies." Id. at 824-25. Instead, the Court noted that "[b]y choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt processing of all charges of employment discrimination." Id. at 825.

Snyder recognizes that many of the events detailed in his Complaint pre-date the 300 day limitations period. He argues, however, that claims based on conduct occurring "from at least 1997 until Baxter transferred its blood plasma business on March 1, 2007" survive because they were part of a "continuous pattern of age/disability harassment and an ongoing hostile work environment." (Doc. 40 at 3).

The parameters of the continuing violation doctrine were detailed by the Court of Appeals for the Third Circuit in Cowell v. Palmer Twp., 263 F.3d 286 (3d Cir. 2001). The Court described the doctrine as creating an equitable exception to the strict application of the statute of limitations where the conduct alleged is part of a pattern which can be recognized as illegal only over a period of time. Id. at 292. The plaintiff bears the burden of demonstrating that the doctrine applies. See Larsen v. State Employees' Ret. Sys., No. 4:07-cv-1838, 2008 WL 2064965, at *10 (M..D. Pa. May 15, 2008) (clarifying that "[t]he burden is on the plaintiff to demonstrate that the continuing violations doctrine applies to toll the statute of limitations.") (citing Cowell 263 F.3d at 292). In Cowell, the Court of Appeals also held that in order to invoke the continuing violation doctrine, "a plaintiff must establish that the defendant's conduct is 'more than the occurrence of isolated or sporadic acts.'" Id. at 292 (quoting West v. Philadelphia Elec.Co., 45 F.3d 744, 754 (3d Cir. 1995)). Whether the plaintiff has made the

required showing depends, at a minimum, on the following factors:

> (1) subject matter - whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency - whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence - whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

Id. "[W]hen a defendant's conduct is part of a continuing practice, an action is timely *so long as the last act evidencing the continuing practice falls within the limitations period*; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bd.of Carpenters,, 1295 (3d Cir.1991) (emphasis added).

The limitations period for hostile work environment claims - which are, effectively, a subset of continuing violation claims - is determined using a similar analysis. West, 45 F.3d at 755. Because a hostile work environment claim "is composed of a series of separate acts that collectively constitute one unlawful employment practice, [it is not fatal to the claim] that some of the component acts fall outside the statutory time period." National R.R. Passenger Corp, 536 at 103 (internal quotation omitted). "*Provided that an act contributing to the claim occurs within the filing period*, the entire time period of the hostile environment may be considered for the purposes of determining liability." Id. (emphasis added).

### a. No Relevant Act Falls Within the Limitations Period

Snyder has not alleged that any specific act evidencing discrimination or that any act contributing to an allegedly hostile work environment fell between November 10, 2006, and March 1, 2007. The only allegations having even an arguable connection to that period are those

based on conduct that was "continuous and ongoing" from the early 1990s to the present.³

These allegations are devoid of "facts suggestive of [the proscribed] conduct" and, therefore, fail to state a claim under the plausibility standard announced in Twombly. See Phillips, 515 F.3d at 233.

### b. Snyder's Attempt to Modify the Complaint in a Supplemental Affidavit

Apparently recognizing the deficiency in his Complaint, Snyder attempts to "supplement" it with an Affidavit which, in fact, contradicts the Complaint and the EEOC filing. (Doc. 40 at 6). For example, in his Complaint, Snyder, as part of his claim under the ADEA, specifically references a conference call alleged to have taken place at 10:00 on the morning of December 27, 2007. During that call, Snyder's co-worker is said to have commented that he (the co-worker) must be getting old because he forgot an appointment. ( Doc. 1 at 6). In the EEOC Charge, Snyder describes a conference call on an unspecified date during which one of Snyder's younger co-workers recommended that another man younger than Snyder, be given an unspecified job. (Doc. 33 Ex. A. at 7). Snyder's supplemental Affidavit revises the contentions relating to these conference calls as follows:

> *Beginning in August 2007* I participated in quarterly conference calls with management and team members as described on page [seven] of my EEOC Charge . . . During these calls, [Upshaw] repeatedly made statements that were negative and demeaning with respect to age. These statements included, "I dropped the ball on that, so I must be getting old." Such statements were made in conference calls in November 2006 and January 2007.

---

³Snyder's hostile environment claim based on disability also fails because the Plaintiff has not alleged facts supporting the conclusion that he met the Act's definition of a person with a disability or a person regarded has having a disability. See, e.g., See Cooney v. Consol. Edison, 220 F. Supp.2d 241, 253 (S.D.N.Y. 2002) (one element of plaintiff's hostile work environment claim is that plaintiff was harassed because of his disability); see also Williamson v. Int'l Paper Co., 85 F. Supp.2d 1199, 1201 (S.D. Ala. 1999) ("to establish a prima facie case of disability harassment, plaintiff must [allege], inter alia, that his employer regarded him as "disabled.").

(Doc. 40 Ex. 1 at 2). Not only is this statement internally inconsistent; it sets out facts omitted from or at odds with those alleged in Snyder's Complaint and the EEOC Charge.

The Affidavit contains other critical inconsistencies. In his EEOC Charge, Snyder alleges that prior to Baxter's sale, he was responsible for the Biolife account, but that this account was taken from him on April 27, 2007 when he "received a directive of revised responsibilities and expectations." (Doc. 33 Ex. A at 8). In his Affidavit, however, Snyder materially alters this contention, stating that he was removed from the Biolife account in "the Autumn of 2006. " (Doc. 40 Ex.1 at 2). Even were the Court to accept the revised allegation in the Affidavit, the phrase "Autumn of 2006" does not establish that Snyder was relieved of the Biolife account during the controlling period of limitations, i.e. after November 10, 2006.

Finally, Snyder did not allege facts in the Complaint or the EEOC Charge sufficient to allow the Court to infer that during the limitations period he suffered from a disability or was regarded as disabled within the meaning of the ADA, that he requested and was refused accommodation for a disability, or that he was subjected to retaliation related to a disability at any point within the limitations period. In his Affidavit, however, Snyder alleges that in December 2006, he notified his manager that difficulties with his back required that he be given assistance installing machines, and that his manager failed to respond. This, however, is irrelevant if Snyder cannot first supply facts showing that he was entitled to protection under the ADA.

Overall, the Court views the Snyder Affidavit as a transparent attempt to amend the Complaint without actually doing so.[4] Because an Affidavit may not be used to amend a

---

[4] In an abundance of caution, the Court notes that even if it were to credit the revised allegations in the Affidavit, it would nonetheless reject application of the continuing violation doctrine.
In his brief, Snyder states that the continuing violation lasted from "at least 1997 through

Complaint, the Court declines to consider it. See Zaroya v. Hilliard, No. 07-456, 2008 WL 219340, at *3 (W D. Pa. Jan. 25, 2008); Luther v. Kia Motors America, Inc., No. 08-386, 2008 WL 2397331, at *3 n.3 (W.D. Pa. June 12, 2008); P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 142 F. Supp.2d 589, 613-614 (D.N.J.2001) ( each finding that plaintiff may not amend the

---

February 28, 2007." (Doc. 40 at 4). He has failed, however, to allege events within that time frame which satisfy the factors set out in Cowell, 263 F.3d at 286. First, the acts alleged do not involve the same type of discrimination - some relate to age discrimination and others are disability - based. When the events are grouped accordingly, it is clear that Snyder has failed to establish a continuing violation under the ADA or the ADEA.

Snyder alleges only that in 2004 he injured his back, and told his superiors, to no avail, that unloading was a two-person job. A co-worker commented that Snyder was incoherent after surgery. (In the EEOC Charge, Snyder alleges that the surgery and the comment occurred early in 2005. (Doc. 33 Ex.1 at 5)). The next relevant events occurred in 2005 or in 2007 - depending upon which version of the Plaintiff's facts is correct. Snyder states that he requested and was refused accommodation after knee surgery. He was then required to install more machines, denied training duties, and removed from a large account. Under the law, these events cannot be viewed as part of a continuing violation because they possessed a degree of permanence, such that the Plaintiff should have realized the discriminatory nature of the acts, and promptly asserted his rights. See O'Connor v. City of Newark, 440 F.3d 125 (3d Cir. 2006). Even more fundamentally, if these events occurred early in 2005, the claim based thereon is time-barred. If they instead took place in August 2007, they are not attributable to Baxter.

The Court turns next to Snyder's age-based claims. Snyder alleges that after a *promotion* in 1997 he was given inferior office space, causing an unidentified person to ask why he didn't retire. Four or five years later, a younger worker was credited for noticing a problem that Snyder had previously identified. In the same year, 2001, or a year later, in 2002, slides at a company dinner made ageist references to Snyder and another employee. Four years later, a younger co-worker commented that Snyder was "older than dirt." In his Affidavit, Snyder alleges that unspecified ageist comments were made by unidentified participants in conference calls in November and December 2006. The remaining age-based allegations in the Complaint and EEOC Charge pertain to events occurring after March 1, 2007. Even accepting, arguendo, the events alleged in the Affidavit, the specific ageist actions alleged took place at wide intervals and in such varied contexts that they can reasonably be viewed only as isolated events.

Even were the Court to consider the overall atmosphere prevailing at Baxter until March 1, 2007, it would conclude that the Plaintiff's allegations are not based on facts sufficient to support a plausible claim of hostile work environment. In Harris v. Forklift, 510 U.S. 17 (1993), a case brought pursuant to Title VII, the Supreme Court held that "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment, [the law] is violated." Id. at 21, (internal citations omitted). Relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. The conduct alleged by Snyder to constitute a hostile work environment under the ADA and the ADEA, which are interpreted consistently with Title VII, simply does not rise to the level of hostility found in *Harris*.

complaint by additional materials submitted on a motion to dismiss).[5]

## IV. **CONCLUSION**

Because the Plaintiff has failed to allege, either in his Complaint or the related EEOC Charge, that Baxter engaged in any discriminatory act or in conduct contributing to a hostile work environment within the applicable limitations period, Baxter's Motion to Dismiss (Doc. 32) will be granted in its entirety. The Title VII claims against the remaining Defendants will also be dismissed, in that Snyder has failed altogether to allege that any Defendant discriminated against him on the basis of race, sex, religion, or national origin. The state law claims against all Defendants will be dismissed as time barred.

An appropriate Order follows.


                                                /s/ *Amy Reynolds Hay*
                                                United States Magistrate Judge

Dated: January 23, 2009


cc:      Counsel of Record via CM-ECF

---

[5] Relying on the decision in Williams v. New Castle County, 970 F.2d 1260, 1266 n.4 (3d Cir. 1992), Snyder argues that the Court may consider facts alleged in his opposition brief - and presumably in the Affidavit - "provided that those facts are consistent with the complaint's allegations." (Doc. 3 at 3). That is not the point made in Williams. Instead, the Court of Appeals wrote: "We are not to be understood as implying that a contention in a brief may substitute for an allegation in a complaint, for clearly it may not. However, in light of our liberal pleading requirements, a brief may help explain a legal theory advanced in the complaint, particularly where the complaint is somewhat unclear." Id. at 1266 n.4. Snyder, in his brief and Affidavit, does not simply attempt to shed light on facts or theories articulated in the Complaint. Instead, he alleges facts that are inconsistent with or in addition to those raised in the Complaint, apparently to evade arguments raised by Baxter in its Motion to Dismiss.